The next matters, which are the Addie and Kjaeret matters, I won't go through all the names, you know who you are, we'll call counsel forward at this time, the person of Mr. Sirocco. Thank you, Your Honor. May it please the court, John Sirocco for the appellants Taylor, Addie, and Perez. And I would respectfully ask to reserve three minutes of my argument time for rebuttal. Granted. Thank you. Your Honor, is that specific order in this case? May I interrupt with a point of order? Are you representing all three? Yes, Judge Hardman. So, because there seems to be some conflict in the sense that Addie and Perez got hammered at trial, Taylor did not. I mean, does that, that doesn't impact in any way your argument? No, I don't believe it does, Your Honor, because as we'll get into the facts, Judge Gomez in his post-trial adjudications, whatever the jury did that was adverse to Mr. Perez, Mr. Addie, that was wiped off by Judge Gomez's Rule 50 adjudication. Okay. All right. I'm sorry to interrupt. No, no. Thank you, Your Honor. Okay. Your Honor, is that order in this case, which was the effect that the sellers were entitled to retain the $1.5 million deposit from the buyer, Jason Taylor, must be reversed. And the reason for that is because it's inconsistent, and it's inconsistent with both the jury's original verdict in favor of Taylor, and because it is also equally inconsistent with the district court's own post-trial adjudications, which acknowledge that there had been a failure of concurrent conditions under the real estate contract at issue here. Additionally, it's also inconsistent with the court's initial post-trial ruling, which initially reduced the amount of the verdict in Taylor's favor, and this is significant, from $1.546 million, $1,546,000, to $1.5 million even, with Judge Gomez finding specifically that that amount of $1.5 million was the amount necessary to provide appropriate compensation. Actually, the district court's order remitting the verdict to $1.5 million from $1.546 million got the applicable law that should govern this case exactly right, because the district court found that that was, quote, the amount of restitution damage is necessary and payable to restore buyers to their original position. The Virgin Islands has adopted the restatement second of contracts, and under the restatement second, and it's reflected in the treatise writers like Corbin, when a contract has concurrent conditions, and that means where performance is required of each side to the contract, and required on a simultaneous basis, and those concurrent conditions are not met, that's what the court has in front of it here, the law provides that A, neither party can put the other party in breach, B, the contractual obligations are discharged, and C, restitution is required for any benefit that has been conferred by one party to the other party here. So does that mean neither party is entitled to a breach of contract remedy? Yes. Really dealing with a quasi-contract remedy? Neither party in this case, based on Judge Gomez's Rule 50 adjudication, was entitled to a breach of contract remedy, but what Judge Gomez got very wrong about this decision was his implication at the tail end of his decision, and it was a lengthy one, that because both sides were in breach, and because he had originally indicated Taylor should get restitution, in his mind, apparently, that meant Taylor couldn't get the restitution, in fact, he had originally ordered, and that got us to an exactly wrong result. Whether both parties were, with both parties being in breach, neither party could pursue a breach of contract remedy against the other, but a breach of contract remedy on the part of Taylor against the sellers was not necessary for the court to give back to Taylor, as restitution, the $1.5 million deposit, and what we were left with, under Judge Gomez's Rule 50 adjudication, was the anomalous situation where both sides were in breach, but the sellers kept their own property, and Mr. Taylor's $1.5 million. Well, what about the seller's loss of the opportunity to sell someone else, or to get other income from the property during the period before the final termination of the contract? That might have been a hypothetical remedy the sellers might have been titled to, if they had proved a breach of contract claim against Mr. Taylor, but the jury found that Mr. Taylor was not in breach of the contract. Judge Gomez overrode the jury. We're not appealing that part of it, because frankly, we don't need to to get to the result that we need to do justice here, but that doesn't pertain to this case, Judge Roth, because in this case, what Judge Gomez found was that each side was in breach. He simply then, in effect, scotch-taped onto his long opinion the wrong remedy. He then said, well, because both sides were in breach, even though I originally ordered that Taylor should get restitution, he should get his deposit back, I'll now conclude that because both sides were in breach, Taylor can't get it back. That's exactly 180 degrees the wrong approach under both the restatement, what Corbin would say, humorously add what Professor Kingsfield might say, and what the cases we cite at the start of our briefs said. This happens quite a bit. Mr. Scirocco, do you agree with the notion that this deal never took? You had buyers who didn't have the money, and sellers who didn't have marketable title. Is that the end of the matter? Is it really, there's a lot going on here, a lot of parties, a lot of claims, but is the case in your view that simple? That's certainly, Judge Hardiman, not an unfair way to look at it, and under those circumstances, the law is very clear, the legal principles are very clear, the contract law principles are very clear. Put everyone in the position they were in before they met. And absolutely, one of the parties to that transaction can't wind up at the end of the day with an advantage, just because someone paid a deposit, has to be refunded. And Judge Gomez, what's ironic about this case is, Judge Gomez had zero problem understanding that originally. But we went off into a kind of a rabbit hole when he overruled the jury, whether he should have or not, on his Rule 50 motion, and again, just to be clear, we're not appealing that because the case is far too simple for us to have to do that. When he went off on his Rule 50 adjudication and decided, in fact, everyone had reached, he reached 180 degrees the wrong implication from that. He said, well, then that must mean that what I originally ordered, the restitution of the deposit to Taylor, that now can't happen. Professor Corbin was once arguing an issue of contract law before the Massachusetts Supreme Judicial Court. And he made a statement of his client's position, and he said, I support that. And the court said, well, doesn't Corbin on contract say differently? And he said, yes, but I've changed my mind. Well, I haven't changed my mind on this one, although we're here because, I don't want to put too fine a point on it, Judge Gomez changed his mind. He went from having originally decided the case the right way, which was kind of in a both to blame case or a deal, Judge Hardiman, a deal that never congealed. Everyone should go back to their status quo pre-contractual positions. At one point, this case was rightly decided, but it got tinkered with, if you'll allow me to put it that way, on these Rule 50 and 59 motions. And at the end of the tinkering, we have a totally incorrect result. We have a result that can't stand. It's a result that unjustly enriches. You're talking about the $1.5 million as a monolith. Let's break that down a little, because there would seem in the record to be quite a factual distinction. I find no evidence, based on my own review of the record, that any of the buyers authorized the disbursement of the $500,000, which helps your cause, obviously. Unfortunately, there's a pretty clear statement from one of your clients to go ahead and cash the million. And that was, you know, part of the deal was here's some hand money, and that's why people are willing to lock up their property, because they get some protection through the hand money. So why don't the sellers keep the million and lose the half million? I don't think that's quite accurate. I don't think the term go ahead and cash the million dollars or any other amount is quite accurate. Wasn't that a quibble? I mean, that is the import of that earlier set of communications, isn't it? It was approval of release of the $1 million. It was an approval on the part of one of the buyers, not Mr. Taylor. And here's where I think the jury verdict. His partner. I mean, you know. Well, that is an agent. The partner is an agent and the lawyer, right? There was a statement. The lawyer said go ahead. So why isn't Mr. Taylor's recourse to his partner and or lawyer? A couple points on this. A partnership theory, a theory of agency was actually argued in the trial and rejected by the jury. The real estate contract here was not with an entity, the XYZ partnership of which these three individual gentlemen were partners. This was a real estate contract, perhaps a little unusual, with three individual people. All of whom had either actual or apparent authority to act on each other's behalf. Well, I would not agree with you, Judge Hardiman. I don't agree that they had actual and I think the issue. Apparent at least. Well, this is why we had a jury trial in this case. One guy was on vacation. Mr. Taylor's unavailable. Somebody spoke. I think it was Perez, if I remember correctly. He spoke for the three. I hear you. And I think the quick, but I also think the accurate answer to say is that was the sum and substance in part of the jury trial. And the jury, we've had references earlier this morning to what deference should be awarded or accorded a jury trial in a case that's like this one. A little different than the unusual circumstances this panel has had in front of it this morning. But in a, what I'll just use the phrase, a more garden variety civil case like this one. That jury and its determinations get an awful lot of deference. And this jury at the end of the day determined that Taylor was not in breach. And also theories like one of these gentlemen spoke for the other. One was the agent for the other were all rejected. This has to be given deference. Interestingly, Judge Gomez in his rule 50 and 59 adjudications, he confirmed this is a case in which both sides breached. He originally ruled on his remitter that the amount of 1.546 million should be reduced to 1.5 because Taylor should get restitution. The restitution is the form of the return of the deposit. It had been released whether it was in escrow or released out of escrow. And that's all we're talking about. That's why Judge Harb and I reacted a little when your honor said cashed. Cashed means this is your money. Go have a good time. That's not what was happening here. It was simply released out of escrow in connection with a real estate transaction that failed. Let me ask you a question. The deposit does, which has to be returned. Does it matter whether it's been released out of escrow or not? No. I mean, it's returnable wherever, if it's sitting in someone's pocket. Exactly. Judge Roth, I could buy a piece of property from you and I could say, here is my check. It is a deposit against Whiteacre that you are about to sell to me. You can be walking around with that check in your purse. You can be walking around with the cash in your pocket. But when our real estate transaction never takes hold and the concurrent conditions are not met with both the jury and Judge Gomez characterized correctly was the operative principle in this case, then Professor Corbin would say, the restatement would say, the cases we have cited would say, I get my money back, not because I get contract damages, but because I get the relief to put me back in the status quo pre-contractual position. The status quo pre-contractual position. It doesn't matter where that money is. Correct, Judge Roth. It does not. Not at all. Thank you very much, Mr. Scirocco. We'll have you back on rebuttal. Thank you. Ms. Talton. May it please the Court? Good morning. My name is Sherry Talton, and I represent the sellers in this case. Given our limited time today, I'd like to focus my remarks on the contract issues. And in that regard, I have three key points I'd like to make to you today. First, buyers argue that a court must return the parties to their pre-contract positions when there's a failure of concurrent conditions. But there was no such failure in this case because sellers offered and were able to perform. So restitution is not an available remedy to the buyers. Second, even if restitution were an appropriate remedy in this case, Mr. Taylor would not be entitled to the $1.5 million that he paid because Section 374 of the restatement would limit his recovery to the portion of money that he paid in excess to the damages that his breach caused to sellers. And finally, contrary to the buyers' repeated statements, the correct standard of review for the district court's ruling under Rule 59 is generally abuse of discretion, giving plenary review of legal conclusions, and clear error review of factual determinations. It's important to keep in mind Judge Gomez's March 1, 2011 opinion, vacating the jury award of damages to Mr. Taylor was not on the basis of Rule 50. It was under the basis of Rule 59, which certainly has a different standard, including whether there was a manifest error of justice, which there was in this case. Why do you claim or how did your clients not fail one of the concurrent or more of the concurrent conditions, when it appears to me anyway that they were just not able to deliver clear and marketable title, particularly as defined by the agreement? In fact, if I could follow up on that, maybe I missed something. Did you even respond to the Taylor argument about the exception for the right-of-way materially breaching the requirement of clear and marketable title? We did respond to that argument, Your Honor, and I can happily address that now. Why wouldn't that be enough to overturn the district court's vacate jury? Really, it's the same reason for all the objections, and there are several, if I may. Section 238 of the restatement instructs us that in order for a party to satisfy its concurrent conditions under a contract, it need only offer performance with a manifested present ability to do so. But some of the things that were needed still, even at the time of trial, hadn't been delivered. If I remember, the dock permits. I mean, your argument essentially was, well, don't worry about it. It's immaterial. They were going to build a new dock anyway. Am I mischaracterizing that? You're not mischaracterizing the specific reason on the dock permits, but maybe I should just jump ahead to the specific issue of sellers' ability to perform. I really think the case hinges on that question anyway. The sellers were able to perform all of their requirements under these contracts for several reasons. Number one, the sellers' obligations under the contracts were modified by virtue of the buyer's waiver of their right to raise any objections, regardless of whether it was the exceptions that Judge Smith asked me about or the dock permits that you've asked me about, Judge. Where was that intentional relinquishment of a known right found in the record? It was clearly found in Mr. Perez's August 3, 2004, email, which clearly and unequivocally represented that Buyer's Counsel had approved the documents that we submitted in July 2004. The contract would have required the buyers to raise a timely objection to any of these defects and then give sellers a chance to cure those defects. Otherwise, under both the contract statement on waiver of conditions and the common law of waiver, Mr. Perez's email was a clear and unequivocal waiver on behalf of all the buyers. You say that a response that the documents look good is tantamount to saying I waive any objection to any failure to comply with the documents? That statement, combined with the failure to timely raise the objection and give sellers the opportunity to cure as the contracts specified, combined those two factors and there was a clear waiver of all of those obligations under the contract, which means sellers never had to do it. That's the first reason we were able to perform. I have two other reasons we were able to perform, if I may. The second reason is none of these pretextual defects that were untimely raised ever constituted a material breach of these contracts. The district court itself found that neither the expiration of the dock permits were a material breach under the relevant factors in Restatement 241. He also found that the exception relating to the Open Shorelines Act, which I refer to as the OSA here, that the OSA was a material breach. In addition, the exceptions regarding the right-of-way that Judge Smith asked me about, the 1953 right-of-way, which I believe is Red Hook Road here, that exception couldn't be a material breach because it's undisputable in the record that it was curable. Where was the critical deficiency in the evidence relative to the dock permits, though? I'm sorry, I don't understand your question. Why are the dock permits not material here? There are several reasons why the dock permits weren't material. Some of them the district court enunciated, and some of them it didn't. The first reason would be that there was undisputed testimony that the dock permits could be renewed. But they weren't. No, they weren't. But the question is, could they have been? Because remember, under the contract, sellers were entitled to a 10-day cure period of any timely objection, including the objection to raising the dock permits. We'll never know whether they could have been cured, except for the undisputed testimony of Mr. DeMoor and the undisputed statements in his correspondence from September 2004 saying, hey, sellers are really ready, willing, and able to perform. We can do it. Just let us know if you're ready. And in response to that request for assurance, we got a repudiation, which would be another topic I'd like to talk about. Before you go there, though, what about the right-of-way on Estate Nazareth? That impairs the title. Well, number one, for sake of argument, I would deny that it impairs the title.  It's in derogation of the contract. Well, it certainly would be. I thought you were going to argue waiver on that. Well, I am. It is a problem, but your argument is, well, they've waived it. That's my number one argument, Your Honor. They've waived the right to objection to that exception. Number two, though, is that it wouldn't be a material breach because the undisputed evidence was we could take any of those exceptions off and remove and cure that problem. But they never gave us our opportunity to do that. Okay, so I'm sorry, did I completely answer your question? Yes. So moving on, I'd like to go back to the doc permits issue, though, because I didn't complete my statement on that. The final reason, and I think perhaps the most important reason, that the expiration of the doc permits didn't constitute a material breach of this contract is that it was a pretext. There's undisputed testimony from a number of witnesses, including Mr. DeMoor, Mr. Carr, who was the architect, Mr. Snapp from the previous deal, and Mr. Oriel, who was the director of the CZM, that the buyers never had any need for these permits. They had to build new docks and they had to get new permits. In fact, they did file new permits. But how do you square that argument and your argument with respect to the right-of-way on Estate Nazareth with the jury verdict? The jury can't come out the way it did if it supported what you just argued. Well, I wouldn't pretend to say that I agreed with how the jury verdict came down on these issues, but clearly it's consistent to argue that all of these exceptions were waived through the buyers' clear and unequivocal waiver through Mr. Blacks. But the jury could not have found that, though, and still ruled for Taylor. Well, I think that, again, one of the arguments. Right? No, I think that you're certainly right, but there was another element here, which we're not saying the pink elephant in the room, is that there was inconsistency in the jury's verdicts as to Mr. Taylor and the other buyers. And whether that was a matter of his celebrity or some other reason, I can't pretend to know. Well, we can't write an opinion based on speculation of that sort either. We have to do our best to harmonize the meal that's been served up to this appellate court, right? I agree, but I'm sorry. So how, again, what rejoinder do you have to my challenge that your arguments about your client being able to deliver clear and marketable title cannot be squared with the jury verdict? My rebutt to that would be the district court ruled under Rule 59, his ruling was a correction of the clear manifest error. And that error was allowing Mr. Taylor to get his deposit back after he admittedly breached the contract to seller's detriment. That's an injustice. And the court correctly, under Rule 59, corrected that injustice. But, again, I think the most important part as for the specific reasons why sellers were able to perform, despite all of the buyer's objections, is that they weren't required to under the contract anymore after the buyers waived. Further, if I can quickly say, they weren't required to do that performance because their performance was excused through repudiation. So if there's no other questions, I have one final quick remark about fairness that I'd like to make to the court. Buyers say it's just unfair to let us keep, to let the sellers keep both the deposit money and the property. But, in fact, the opposite is true. Non-refundable deposits are common in the real estate market to protect sellers against the risk of market losses and lost opportunities for sales. And that's exactly what happened in this case. In that regard, let me ask you a follow-up question relating to what I believe was the remedial argument that you made. I mean, if we found error, if we proceeded as you suggest, do we need to remand, which I think you have suggested, or can we just reinstate? Well, if I may, I believe that restitution is not appropriate, so a reversal is the appropriate order here. However, if the court is inclined to grant Mr. Taylor any restitution, its only option would be to remand, to do the balancing test that's required by Section 374 of the restatement. Does that answer your question? Yes, it does. Thank you. Thank you. I see that I'm out of time, so if there's no other questions, I'll thank the court. Thank you very much, Ms. Talton. Thank you. Ms. Hodge. Good morning, Your Honor. Maria Tankinson Hodge. I represent Kevin DeMoore in this matter. As you know from the record, Mr. DeMoore was the attorney for the sellers in this transaction and also a principal of the escrow company, Premier Title, which was a party below but settled during the course of the proceedings. The district court committed error in the award of summary judgment for conversion and also in its post-trial ruling upholding the fraud verdict against Attorney DeMoore because the gist of the action doctrine properly applied should have barred both of those tort claims against him. The court ruled that the gist of the action doctrine did apply. Has the gist of the action doctrine been adopted as a matter of the common law of the Virgin Islands? It has. Judge Gomez himself adopted it. But not by the Supreme Court of the Virgin Islands? Are we required to predict here? I think it is probably an element of a prediction. I don't think the Supreme Court has ruled we didn't find any cases by the Supreme Court. Because the gist of the action doctrine is not universally recognized among the various states. But it certainly has been adopted by the district court here, and to the extent that the district court has chosen to adopt it, we submit that it must do so, it certainly should do so, in a fashion that recognizes the doctrine appropriately as it has been explained. Do I remember correctly that the superior court has adopted the gist of the action doctrine? The superior court has applied it as well. All right. Thank you. So the concern that we're expressing, Your Honor, is that the district court applied the doctrine here, wrote extensive opinion on the doctrine and its application, to the sellers, the buyers, and the escrow agent. And the only party in the entire proceeding that he singled out not to apply the doctrine to was the seller's attorney and the principal of the escrow agent. And we submit that was an arbitrary and legally unjustified distinction. The Third Circuit has ruled that the gist of the action doctrine bars tort claims against individual defendants, where the contract between the plaintiff and the individual officer's company created the duties that the individual allegedly breached. That's the holding in Williams v. Hilton Group. It's the same conclusion the court reached in Beeler v. Mutual Fire, decided several years later, which we've cited in our briefs. Do you have any objection to us reversing the judgment against your client and instead ordering that that $500,000 be part of the restitutionary award? I don't even know how to answer that, Your Honor. I wouldn't want to concede something that would be detrimental to another party, but I certainly do not object to the court reversing the judgments against Mr. DeMoor as a standalone part of any ultimate decision you reach. I'm not sure you answered my question. I'm not sure that I've understood it then, Judge. The point is, and this is a big assumption, I'm not suggesting I'm going to come out this way in the case, but it occurs to me looking at the fact that your client is on the hook for $500,000, it's not a coincidence that that's the same amount as the second deposit. Would you agree with that? Exactly. It is the second deposit. Right. So let's assume that some of your adversaries, one or more of them, are entitled to get that second deposit back. Do you care? As long as your client is exonerated and they get that money back, are you okay with that? Well, I'm sure that my client cares because this is his client, but I would say that the court ought to take the step that is correct as to Mr. DeMoor and reverse this, and if you also conclude in this case that there is some amount of restitution due to the buyers, which I obviously don't predict, that that would be a standalone issue, and if there is such restitution due, that the court would hopefully make a determination that allows for the amount, if any, to be restored to be determined on the basis of the record corrected in part for what we believe is this legal error as to Mr. DeMoor's part of the case. And what about the fraud part? The fraud part should be treated in the same fashion as the conversion part, Judge, because they're both torts, and they both should have been barred by the gist of the action doctrine under the correct application. Because if there was a misrepresentation made, it was a misrepresentation within the ambit of the contractual documents. Exactly, Judge. In fact, the specific allegations that the buyers rely on against Mr. DeMoor when they contend that he sent documents that were in one manner or another not in conformity with the contracts, that they weren't sufficient under the contracts, that the applications, for example, to transfer the CZM permits that were sent to the buyers were not in the buyer's estimation satisfactory, in retrospect, though they were at the time, that those are the meat of their claim of fraud against Mr. DeMoor. And so if they are relying on that as part of their claim of fraud against Mr. DeMoor, by definition, in our view, that's intertwined with the contract, and that's what the gist of the action doctrine says shouldn't be allowed. Thank you, Ms. Hodge. Your time is up, unless you have some quick point that you want to close on. I'd just like to say, Judge, in closing, that for practical purposes, for the practice of law for real estate lawyers, the notion that a lawyer can be sued in tort, either for conversion or fraud, on the basis of saying things to another party about his client's ability to perform a real estate transaction, to convert that to a tort against the lawyer is just fundamentally inconsistent with the way people practice law. If the client can't be sued for those statements under the gist of the action doctrine, then certainly the lawyer shouldn't be subject to suit in tort for the very same statements. Thank you very much. Thank you, Judge. Mr. Scirocco, rebuttal? Yes, Your Honor, I will be brief. I think the key statement from my opponent, which really helps start on the process of untangling this ball of yarn, was the comment when she said, I wouldn't pretend to say I agreed with the way the jury ruled. Well, sorry, that ship has sailed. The jury did rule. The jury ruled that the sellers breached. The jury ruled Taylor did not breach. Then Judge Gomez started down a path of post-trial rulings that sadly, in my view, didn't add a lot of clarity or accuracy to this, because at the end of the day what he found was that instead of the jury concluding that Taylor had not breached, he would conclude that Taylor, in fact, had breached, and then he reached a ramification inconsistent with black-letter law of what happens when both sides, both sellers and buyers, have breached. That's a failure of concurrent conditions. We know that the law calls out, in the most clear terms possible, what happens under those circumstances. Everyone has to be put back in their pre-contractual position. The only way to do that is to get back to how he had correctly viewed the case at one point in time, which was that Taylor, who had paid this money, needed to get it back. But how could Judge Gomez have gotten it right? I have great sympathy for the predicament he found himself in once the verdict was opened, right? Because the jury finds against Addy and Perez damages of $339,000. So if Addy and Perez are liable, then that means that the sellers could not have been deemed by the jury to have failed a concurrent condition. No, the jury found the sellers, excuse me, the other buyers in breach, Taylor not in breach, but Taylor had been the one who had deposited all of the $1.5 million. And as Judge Gomez initially correctly understood, that meant Taylor needed to get restitution in the form of a return of the $1.5 million. In fact, when the jury's verdict was for Taylor in the amount of $1.546 million, Judge Gomez correctly said, oh no, that amount should be $1.5. That's the amount of the deposit and it's the return of the deposit, which is the relief that needs to be accorded here. What thereafter happened was we went down a little bit of a cul-de-sac. Now let me just cut you off because you gave me the answer I wasn't expecting. So I thought you were going to tell me it can be harmonized because Addy and Perez were found guilty of fraud. Well, that's true too. And on the breach of contract claim, the sellers were deemed liable. And no damages were awarded on the breach of contract. So all we're talking about here again is a contract, performance is due from each side. The presumption in the law is when performance is due from each side, it's due simultaneously. Key point. Performance in this case was not forthcoming from the sellers for all the reasons this panel has enunciated, all the failures with the title. Where's the evidence you gave them the 10 days to cure? They had more than 10 days to cure and never did, as I think Judge Smith indicated. The cure hadn't been put into effect when the matter was already in a lawsuit and being tried to a jury. And it was clearly material, just as a common sense matter, it had to do with the access to the island. But as a jurisprudential matter, the issue of materiality, the issue of their waiver, all were issues that went to the jury, the jury ruled. So I think the path is very clear. We get back to the understanding of this case as a case in which concurrent conditions existed. They weren't met. We look to what the restatement and the treatise writers say we do. We've got some very strong precedents indicating that the only proper path here is to reverse this case, in pertinent part, for the refund of those dollars to Taylor to have restitution. Do you care whether it comes out of Damore's hide or not? I think Judge Gomez has already spoken to that in the sense that he's indicated that, at a minimum, there cannot be a double recovery. You just want your $500 back, regardless of whether it's from Damore. No, $1.5 million. But Damore was only hit for $500. No. We need $1.5 million plus interest back. Thank you. Thank you very much, Mr. Scirocco. Thank you to all three of the counsel. The case was well argued.